[Crim. No. 16914. In Bank. Apr. 4, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
SHERRIE JEAN WETZEL, Defendant and Appellant.

---

**COUNSEL**

Richard H. Levin, under appointment by the Supreme Court, and Kathleen J. Kirkland, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, Frederick R. Millar, Jr., and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**WRIGHT, C. J.—** Defendant appeals from a judgment (order granting probation) entered upon a plea of guilty of possession of seconal, a restricted dangerous drug. (Health & Saf. Code, § 11910.) She contends that she was unlawfully arrested for obstructing an officer in the performance of his duties (Pen. Code, § 148) when she passively asserted a constitutional right, and that contraband discovered during a search of her person pursuant to the arrest was unlawfully received in evidence. We agree with defendant's contentions. As the contraband was the sole evidence of defendant's guilt the judgment must be reversed.[1]

At approximately 4 a.m. on a date in May 1971 police officers responded to a burglary alarm in the vicinity of defendant's apartment. They

---

[1] All statutory references, unless otherwise indicated, are to sections of the Penal Code.

Defendant has preserved her right to appeal on the issue presented notwithstanding her guilty plea. (See §§ 1237, 1237.5, 1538.5, subd. (m).) She was initially charged with violations of section 148 and Health and Safety Code section 11910 and entered not guilty pleas. Her motion for dismissal pursuant to section 995 was denied, and her motion for suppression of evidence pursuant to section 1538.5, submitted on the transcript of proceedings had at the preliminary hearing and additional testimony, was likewise denied. Thereafter she withdrew her plea of not guilty as to the possession charge and entered a guilty plea. The obstructing charge was dismissed in the interest of justice, proceedings were suspended and defendant was placed on probation for a period of five years. This appeal followed.

were informed by a citizen in the neighborhood that he had observed the flight of three juveniles after they had smashed the window of a store building. One of the juveniles had gone to a nearby parking lot, and the officers apprehended a suspect at the lot.

The citizen informer reported that he was of the opinion that a second suspect entered defendant's apartment. Two officers went to the apartment and, through a partially open door, observed several persons asleep inside. An officer knocked on the door, awoke defendant, advised her of the circumstances and requested permission to enter the apartment and search for the suspect. Defendant told the officers to "Get the hell out of here if you don't have a damn warrant." An officer explained that they did not need a warrant in the circumstances, but defendant nevertheless continued to refuse permission to enter. During the course of the conversation defendant, who was fully clothed, stepped off the bed onto the interior threshold of the open doorway. She was next threatened with arrest for obstructing an officer in carrying out his duties, but she remained adamant in the absence of a warrant. An officer then seized defendant, turned her around and put handcuffs on her. The officers then entered and a search of the apartment failed to reveal the suspect.[2]

At no time during the foregoing events did defendant in any way physically confront the officers, limiting her objections to verbal abuse and protests and standing passively in the doorway during the verbal exchange.[3] She offered no physical resistance to either her arrest or the officers' entry. Following the arrest she was removed to a police station where a booking search of her person disclosed the challenged contraband.

The crux of defendant's contention is that her acts were nothing more

---

[2]The suspect was not found in the apartment but was later apprehended in the immediate vicinity thereof. From their position at the door the officers could observe the whole of the interior of the one-room apartment except for the bathroom.

The foregoing account of events leading to defendant's arrest is, as it must be for purposes of appellate review, consistent with the testimony of the People's witnesses. Defendant's version is somewhat different. She testified that when she was aroused from her sleep officers were already in the apartment and the door, which she had closed before retiring, was open. The officers did not explain their presence other than to advise that she was being placed under arrest for burglary. In this connection, at the preliminary hearing the arresting officer testified that defendant's statement to him was "get the hell *out* of here if you don't have" a warrant. (Italics added.)

[3]Testimony elicited at the hearing upon the motion to suppress under section 1538.5 disclosed that one of the two officers who confronted defendant was 35 years of age, 6 feet 2 inches tall and weighed 217 pounds. The other officer was 37 years of age, 6 feet tall and weighed 220 pounds. Defendant was 22 years of age, 5 feet 2 inches in height and weighed 117 pounds.

than a passive assertion of a constitutional right and that such acts cannot form the basis for criminal conduct. If her conduct did not constitute grounds for her arrest then, of course, the search of her person was an invasion of her Fourth Amendment rights and the evidence seized should have been suppressed. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407].)

■ Preliminarily it should be stated that the officers were clearly correct in their assertion that they did not need a search warrant in order to enter an apartment in hot pursuit of a criminal suspect. The citizen informant had provided them with fresh information which had already been proved to be reliable. (See *Warden* v. *Hayden* (1967) 387 U.S. 294, 298 [18 L.Ed. 2d 782, 787, 87 S.Ct. 1642]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 706 [47 Cal.Rptr. 909, 408 P.2d 365].) The critical issue, however, is whether the officers were in fact obstructed in carrying out their right to enter without a warrant.

The People take the position that because the trial court found on substantial evidence that there was probable cause to arrest defendant for a violation of section 148, the issue of the propriety of her arrest is foreclosed. They argue that defendant's obstruction of the officers consisted of the mere act of standing in an open doorway in such a manner that she would have had to be pushed aside in order that the officers might have made an entry. The People concede that defendant had the right to refuse her consent, but claim that her actions "went beyond a mere refusal to consent and actually amounted to a deliberate resistance, delay and obstruction" because the officers "having once determined that their reinforcements were in position . . . had to move [defendant] before they could enter."[4]

There can be no question that defendant could have exercised her right of refusal to a requested entry by officers, and the People so concede. According to the People's witnesses she was repeatedly requested to give her consent to the entry and, as a reason why she should give such consent, it was argued to her that the officers could nevertheless effect an entry without that consent. ■ But at no time prior to defendant's arrest did the officers actually attempt or state that they intended to make such an entry. Nor is there any substantial evidence which would support a con-

---

[4]Although the officers might have properly entered in hot pursuit of the suspect it appears that they elected not to do so and continued to seek defendant's consent to their entry up to the very moment of her arrest. During the period of confrontation other officers took positions outside the ground-level apartment where they might apprehend the suspect should the entry cause him to attempt to flee the vicinity.

clusion that had the officers attempted to exercise their right to enter because they were in hot pursuit defendant would have physically resisted.[5] Defendant's entire course of conduct was directed to refusal of consent, and nothing more. Although she had positioned herself in the open doorway, it appeared to be the only position she could assume while conversing with the officers.[6] Had she complied with the officer's requests and stood back from the doorway this in itself would have, under the circumstances, constituted the very consent which she was not required to give. (See *People* v. *Cressey* (1970) 2 Cal.3d 836, 841 [87 Cal.Rptr. 699, 471 P.2d 19].) We conclude accordingly, and as a matter of law, that defendant's total conduct cannot be characterized other than a refusal to consent to a request to enter her apartment. Such conduct cannot constitute grounds for a lawful arrest or subsequent search and seizure.

In *People* v. *Cressey, supra,* 2 Cal.3d 836 the defendant refused to open the door of his residence on demand of an officer with grounds to make a lawful arrest, and therefore with grounds to force an entry. We stated in that case that the defendant was not required to open the door on demand therefor and, quoting from *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 at page 68 [27 Cal.Rptr. 889, 378 P.2d 113], further stated: " 'If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest . . ., such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion.' . . . Refusal to open the door is obviously not a public offense. (Pen. Code, §§ 69, 148.)" (*People* v. *Cressey, supra,* 2 Cal.3d 836, 841-842, fn. 6.)

*Cressey* thus suggests that the refusal to open a door on proper police demand cannot constitute a violation of section 148, and it requires no extension in principle to hold in the instant case that the refusal to stand aside and permit a requested entry, even when officers as in *Cressey* had a right to force an entry, likewise cannot constitute a violation of section 148. The People, however, argue that *Cressey* is inapplicable be-

---

[5]The officer who carried on the verbal exchange with defendant testified as follows:

"Q. Whatever occurred between you and [defendant] at the door did not bar you from making an entry and bar you from making a search; you performed your duties as you desired to do them? A. Yes, I did. . . . Q. Did she make any statements indicating to you that you were going to have to move her out of the way? A. Not in those exact words. Q. In other words, she was just saying words to the effect that she had said earlier, 'You're not going in here unless you have a warrant' or maybe language a little more unladylike? A. Yes, sir."

[6]The bed from which defendant arose was immediately to her left, and the door in its open position was immediately on her right, as she faced the officers at the doorway.

cause in that case the defendant was entitled to remain passive and could not be compelled to take the demanded affirmative action in cooperation with the police. In the instant case, the People contend, defendant did not merely remain passive; she interposed herself in the doorway and thus created an additional obstacle which had not been present when the officers arrived at the doorway.

The People's distinction of *Cressey* would be valid if, contrary to the undisputed facts in this case, defendant had blocked the doorway and impeded the officers in making an entry in hot pursuit. Here, however, the officers awoke defendant from a sound sleep and stood at the doorway while they made repeated requests of her. There is no substantial evidence in support of any conclusion other than that she came to the doorway only in response to the officers' attempts to discuss the question of their entry and persuade her to give consent. The record thus fails to support the factual basis for the People's distinction of *Cressey*.[7]

■ It is immaterial in the view we take of the case that defendant's insistence on a warrant was not well founded. She had the right to withhold consent to enter and, as long as entry was not sought on any other ground than with her consent she committed no impropriety and certainly not a violation of section 148. (See *District of Columbia* v. *Little* (1950) 339 U.S. 1, 5-6 [94 L.Ed. 599 602-603, 70 S.Ct. 468]; *Miller* v. *United States* (5th Cir. 1956) 230 F.2d 486, 487-488.)

■ Defendant's arrest being unlawful, the search and seizure which followed were also unlawful and the contraband evidence should have been suppressed.

The judgment is reversed.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent. The majority concedes that blocking a doorway is a violation of Penal Code section 148 if an officer is thereby wilfully impeded from making an entry in hot pursuit. (*Ante,* pp. 109-110.) Therefore, defendant's conviction should be affirmed, because that is exactly what she did.[1]

---

[7]In fact, it affirmatively appears that the entry was delayed by design and not by any volitional conduct of defendant. One officer testified at the preliminary hearing that approximately 10 minutes elapsed from the time he arrived at the apartment until he arrested defendant. The officers delayed until back-up units were positioned and then entered without opposition.

[1]In an appeal under Penal Code section 1538.5, subdivision (m), the record must, of course, be viewed in the light most favorable to the party prevailing below.

Defendant unquestionably blocked the doorway by standing in front of it and refusing to move.[2] The contention that defendant simply took "the only position she could assume while conversing with the officers" (*ante,* p. 109) is undercut by the fact that she spoke with them for several minutes without getting out of bed.[3] Moreover, even assuming arguendo that she did have to stand in the doorway to talk to the officers, she should have stepped aside when ordered to do so.

The majority objects: "Had she complied with the officer's requests and stood back from the doorway this in itself would have, under the circumstances, constituted the very consent which she was not required to give." (*Ante,* p. 109.) The objection is not well founded. Consent given in submission to an assertion of authority is involuntary and without legal effect. (See *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548-549 [20 L.Ed. 2d 797, 802-803, 88 S.Ct. 1788]; *People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665]; *People* v. *Michael* (1955) 45 Cal. 2d 751, 753 [290 P.2d 852].) The question whether a defendant's consent was coerced by a claim of authority is to be decided in light of all the facts and circumstances. (See *People* v. *Smith* (1966) 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921]; see also *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) Stepping aside could not have been construed as anything other than submission to an explicit assertion of authority here because, after having been repeatedly refused permission to enter, the officers advised defendant a search warrant was unnecessary and threatened to arrest her if she did not move.[4]

---

(See *People* v. *Superior Court* (*Peck*) (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].)

[2]"Q. Where did [defendant] stand in relation to that threshold? A. Just in front of the door, directly in front of the door. Q. Would she have had to move in order for you to get into the premises? A. Yes, sir, she would have. . . . Q. Now, you felt that you could not walk into the apartment without at least walking over her; there was no room to walk to the side of her? A. No, sir, there was not."

[3]"Q. At what point in time did [defendant] get off the bed? A. After she began yelling the profanities and we requested several times and advised her several times of the situation, she then aroused from the bed very angrily." "Q. And after you first knocked on the door and my client was awakened, how much time elapsed before—we have a general ten-minute period—how much of that ten minutes, approximately, before my client got off the bed; five minutes, would that be fair? A. Perhaps."

[4]"Q. Did you ever tell [defendant] to step aside so you could enter? A. Several times. Q. That is, after she got off the bed and faced you? A. Yes, sir. Q. And what did she say or do? A. Again yelling profanities and asking for a search warrant.

The absence of forceful resistance (*ante,* pp. 108-109) is beside the point. "[T]he use of force is not an element in the violation of section 148." (*In re Culver* (1968) 69 Cal.2d 898, 905, fn. 10 [73 Cal.Rptr. 393, 447 P.2d 633].) "Unlike section 834a, which applies only to forceful resistance, section 148 penalizes even passive delay or obstruction of an arrest, such as refusal to cooperate." (*People* v. *Curtis* (1969) 70 Cal.2d 347, 356, fn. 6 [74 Cal.Rptr. 713, 450 P.2d 33].)

The conviction should be affirmed.

McComb, J., and Burke, J., concurred.

---

Q. How were you able to get her out of your way? A. Upon advising her numerous times to move and she refused to, we advised her that if she didn't move, that she would be placed under arrest for interfering with us in performance of our duty. She failed to move. We then placed her under arrest and began our search of the apartment for the suspect."