[Civ. No. 57798. Second Dist., Div. Four. Apr. 1, 1980.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
DEMETRIA DAI-RE et al., Real Parties in Interest.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and John W. Messer, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard H. Levin, under appointment by the Court of Appeal, for Real Parties in Interest.

**OPINION**

FILES, P. J.—In this proceeding under Penal Code section 1538.5, subdivision (o), the People ask review of an order of the superior court

suppressing evidence seized when officers entered two residences in fresh pursuit of burglary suspects. The trial court based its suppression order solely upon the ground that the nighttime burglary of a retail store is not an offense of sufficient gravity to justify entering a private residence to make a warrantless arrest.

At about 4 a.m. on November 22, 1978, police were called to the Casual Girl Clothing Store on South Vermont Avenue, where burglars had broken in by ramming an automobile through the front of the building. Four males and two vehicles had been seen leaving the location. Information obtained at the scene led the officers to an alley behind 52d Street, about a half mile away. A sergeant was called to that location to supervise the investigation. In a garage opening onto the alley back of 1156 West 52d Street, they found a vehicle which appeared to be the one which had broken the store front. Inside that car were piles of clothing, bearing Casual Girl price tags. Other Casual Girl clothing items were on the ground. A citizen observer told the officers he had seen two men pushing that car in the alley, after which they had run to the upstairs apartment of number 1156 West 52d Street. A neighbor told the officers that the men who had pushed the car in the alley lived in the front and rear buildings at the 1156 property. There were fresh footprints leading from the garage area to the rear house numbered 1156 1/2. The ground was damp from a recent rain.

An officer knocked on the door of 1156 1/2 and a female looked out the window. She said she would not admit him because she thought he would murder her. The sergeant then knocked on the door and when the woman looked out he explained that they were police officers looking for burglary suspects whom they thought had entered there. He shined his flashlight on his uniform, but she again refused admittance. The officers then forced entry, arrested two persons who were inside, and observed several items of clothing bearing Casual Girl price tags.

The officers then knocked on the door of the upstairs apartment which the two men had entered. The door opened and defendants Edmond and Pierre Dai-re were seen right inside. The officers entered and made the arrests. They also found cotton gloves, a stocking cap, pants and a jacket, all of which were wet as though they had been worn in the rain.

The circumstances under which officers may enter a residence to arrest without a warrant are described in *People* v. *Ramey* (1976) 16 Cal.

3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333]: "In this context, 'exigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers."

In *People* v. *Escudero* (1979) 23 Cal.3d 800 [153 Cal.Rptr. 825, 592 P.2d 312], the court sustained an arrest of a burglar who had been traced from the crime to his place of residence. The court said (at pp. 810-811): "Throughout the events in question the police were pursuing a man whom they suspected of having broken into an occupied private home in the middle of the night to commit a burglary; this is a serious crime, with an ever-present potential for exploding into violent confrontation. The need to prevent the imminent escape of such an offender is clearly an exigent circumstance within the doctrine here invoked."

Also of interest is the statement on this subject appearing in *People* v. *Wetzel* (1974) 11 Cal.3d 104 [113 Cal.Rptr. 32, 520 P.2d 416]. In that case officers had forced entry into a residence trying to find one of three juveniles who had smashed the window of a store building at 4 a.m. The controlling issue in *Wetzel* was whether the female occupant of the residence was subject to arrest for obstructing an officer when she verbally protested the officers' entry. The court commenced its analysis of the situation with this statement: "Preliminarily it should be stated that the officers were clearly correct in their assertion that they did not need a search warrant in order to enter an apartment in hot pursuit of a criminal suspect. The citizen informant had provided them with fresh information which had already been proved to be reliable." (11 Cal.3d at p. 108.)

In the present case it is not disputed that the officers were in fresh pursuit and that they had reasonable cause to believe that the burglars were inside the house numbered 1156 1/2 and the upstairs apartment of number 1156. The *Escudero* case was called to the trial court's attention, but the court responded as follows: "I don't think it would apply to what they think of as a low-grade felony. I don't think that is the language that the cases suggest is a hot pursuit doctrine. I think it is a good doctrine, and I think it should apply where you do have a hot pursuit type of situation, but I think within that framework you need a

very serious felony to justify the breaking into a home without a warrant by today's standards. That's the law. I am not just too sure that we have that serious of a situation. I think the situation was serious enough to justify the entry into the garage, and that is one sign of an intrusion, and I think that was proper. But when you are talking about an intrusion into a person's home, you are talking about a much more serious entry. The fact that you have a hot pursuit justifying one type of intrusion, I don't think it logically follows that that same type of hot pursuit justifies any type of an entry, including breaking into a person's home."

■ Though the trial court correctly observed that entry into a home is a serious intrusion, the classification of the burglary in this case as a "low grade felony" is inappropriate. A nighttime burglary of a retail store is also a serious matter, punishable by imprisonment in state prison for a term as long as three years. (Pen. Code, §§ 18, 460, 461.) Although the chances of a violent confrontation in a store are not as great as in a residence, it is not uncommon to find security guards or night workers in commercial establishments.[1] Although the risk of violence is one kind of exigency, the apprehension of a felon and the preservation of evidence are also objectives of great social importance. The standard in *Ramey* (quoted *supra*) is in the disjunctive: "or to forestall the imminent escape of a suspect or destruction of evidence."

In *Escudero* the court rejected the contention that "exigent circumstances" required a showing that the suspect was armed and dangerous. It was sufficient that the suspect was believed to have committed a serious crime "with an ever-present potential for exploding into violent confrontation."

In *Wetzel*, although apparently no one there contended that a store burglary was "a low-grade felony," the court's positive statement must be respected as that court's considered view that the immediate apprehension of a store burglar was an objective justifying the entry in that case.

The record here illustrates that a store burglary is not necessarily a quiet and peaceful form of theft. Here a four-man team rammed an automobile through a storefront on one of the busiest thoroughfares in

---

[1]As an example of a store burglary which turned into a robbery see *J. J. Newberry Co.* v. *Continental Cas. Co.* (1964) 229 Cal.App.2d 728 [40 Cal.Rptr. 509].

Los Angeles. They must have known that they would attract attention, even at 4 a.m. They were prepared to and did depart with a substantial quantity of merchandise in the brief time between their brazen assault and the arrival of the police. What else they had in mind to complete their escape and the disposition of the loot can be only a matter of speculation. We cannot assume that this crime had any less "potential for exploding into violent confrontation" than the farmhand's amateurish household burglary which was the subject of the *Escudero* opinion.

Let a peremptory writ of mandate issue commanding the respondent court to vacate its order of October 10, 1979, in Los Angeles Superior Court case No. A 348558 entitled The People v. Demetria Dai-re et al., granting in part the defendants' motion to suppress evidence and make a new order denying defendants' motion in its entirety.

Kingsley, J., and Jefferson (Bernard), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.