[No. A036930. First Dist., Div. Four. June 2, 1987.]

RAYMOND QUINTANA, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN LEANDRO-HAYWARD
JUDICIAL DISTRICT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

362

COUNSEL

James R. Jenner, Public Defender, and Tammy Yuen, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ronald E. Niver and Morris Beatus, Deputy Attorneys General, for Real Party in Interest.

OPINION

CHANNELL, J.—Petitioner challenges the constitutionality of Vehicle Code section 23159,[1] a statute enacted in 1985, which requires a period of

---

[1] All further statutory references will be to the Vehicle Code unless otherwise designated.

confinement in county jail if a person convicted of driving under the influence of alcohol/drugs is also found to have willfully refused to take a test to determine the alcohol content of breath, blood or urine.[2]

Petitioner was charged with one count of driving under the influence of alcohol. The complaint also alleged a prior driving under the influence conviction and a refusal to take a test within the meaning of section 23159. Petitioner challenged the section 23159 allegation by a demurrer in the municipal court and then by petition to the superior court. Denied relief, petitioner filed a petition for writ of mandate in this court. The petition was initially denied but, upon direction of the Supreme Court, we issued an alternative writ.

Since 1966, California has had an "implied consent" law requiring suspension of an individual's driver's license when the individual, after having been lawfully arrested for driving under the influence of alcohol, refuses to submit to any of the statutorily prescribed tests. (§§ 13353, 23157.) In 1985, the Legislature enacted the La Follette-Katz Chemical Test Enhancement Act, providing the increased penalty of section 23159. (Stats. 1985, ch. 735, § 6.) Section 1 of the act provides in part: "The Legislature finds that the state's drunk driving laws are not completely effective because of the refusal by many drivers to take the required chemical tests which show their intoxication. It is therefore the intent of the Legislature to enhance the penalties for refusal to complete the chemical test. It is further the intent of the Legislature to reorganize the Vehicle Code so that all current provisions related to the duty of a driver to submit to chemical tests are consolidated in the article prescribing offenses involving alcohol and drugs."[3]

"Past cases have upheld the constitutionality of section 13353 [the "implied consent" law] against claims that the statute (1) violates the driver's privilege against self-incrimination, (2) authorizes an unreasonable search or seizure, (3) denies equal protection to variously defined classes, and (4) fails to satisfy procedural due process requirements." (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 73 [177 Cal.Rptr. 566,

---

[2]Section 23159 provides the following penalty enhancements: (1) mandatory confinement in the county jail for at least 48 hours if the person is convicted of a first violation of driving under the influence of alcohol (subd. (a)(l)); (2) mandatory confinement in the county jail for 96 hours if the person is convicted of a second violation (subd. (a)(3)); (3) mandatory confinement in the county jail for 10 days if the person is convicted of a third violation (subd. (a)(4)); and (4) mandatory confinement in the county jail for 18 days if the person is convicted of a fourth or subsequent violation (subd. (a)(5)).

[3]The statutory scheme now provides that a person arrested for driving under the influence shall be told that his or her failure to submit to the required chemical test will result in mandatory imprisonment if the person is convicted of driving under the influence as well as suspension of the person's driving privilege for the requisite period. (§ 23157.)

634 P.2d 917], fns. omitted.) Petitioner, nevertheless, launches his constitutional challenges on many of the same grounds, seeking to distinguish cases rejecting the previous claims.

I.

*The Privilege Against Self-incrimination*

In *Schmerber* v. *California* (1966) 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-917, 86 S.Ct. 1826], the Supreme Court held that the privilege against self-incrimination does not bar authorities from obtaining the physical evidence of intoxication even without a person's consent. The court explained that the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, . . ." (*Id.,* at p. 761 [16 L.Ed.2d at p. 914].) *Schmerber* expressly reserved the question of whether the use of the individual's refusal to give the nontestimonial evidence violated the privilege. (384 U.S. at p. 765, fn. 9 [16 L.Ed.2d at p. 916].) The California courts soon answered in the negative. (*People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; see also *People* v. *Municipal Court (Gonzales)* (1982) 137 Cal.App.3d 114, 117 [187 Cal.Rptr. 716]; *Finley v. Orr* (1968) 262 Cal.App.2d 656, 663 [69 Cal.Rptr. 137].)

In *Sudduth,* the court considered whether using the refusal as evidence in a prosecution for driving under the influence violated the privilege. The court stated that its reasoning in *People* v. *Ellis* (1966) 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393] was applicable. In *Ellis,* Justice Traynor explained that refusal, in that case to a voice display, was not a testimonial communication. "It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody [citation], false alibi [citation], flight [citation], suppression of evidence [citation], and failure to respond to accusatory statements when not in police custody [citation], its admission does not violate the privilege." (*Id.,* at p. 537.)

While not rejecting the reasoning of the California Supreme Court, the United States Supreme Court in *South Dakota* v. *Neville* (1983) 459 U.S. 553 [74 L.Ed.2d 748, 103 S.Ct. 916] chose a line of reasoning more applicable to the case at hand. The court looked to the means by which refusal was obtained, pointing out that " 'the Fifth Amendment is limited to prohibiting the use of "physical or moral compulsion" exerted on the person asserting the privilege.' " (459 U.S. at p. 562 [74 L.Ed.2d at p. 758].) The court concluded that there was no impermissible coercion in obtaining the refusal. "[T]he values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test

or having his refusal used against him. The simple blood-alcohol test is so safe, painless, and commonplace, . . . that the State could legitimately compel the suspect, against his will, to accede to the test. Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, . . . [¶] We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices. . . . We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination. [Fn. omitted.]" (*Id.,* at pp. 563-564 [74 L.Ed.2d at pp. 758-759], italics in original.)

The reasoning of *South Dakota* v. *Neville* is persuasive in considering the issue before us. California has made the choice more difficult but we do not believe it has reached a level of improper coercion which would violate the values behind the privilege against self-incrimination. The arrestee still has his choice—a "safe, painless and commonplace" test or license suspension plus the use of the fact of refusal against him, now including a sentence enhancement should he be convicted of driving under the influence.

Petitioner distinguishes the cases holding that the refusal may be used as evidence in a prosecution for driving under the influence from his case where he is being directly penalized for refusing. He also distinguishes cases which uphold a license suspension as a penalty for refusal (see, e.g., *Finley* v. *Orr, supra,* 262 Cal.App.2d 656), since here he is being criminally penalized. As far as the privilege against self-incrimination is concerned, these distinctions are not relevant. If the refusal to submit to a test for intoxication is protected by the privilege against self-incrimination, no penalty may be imposed for its exercise—criminal, civil or administrative. ■ Protection extends to "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" (*Spevack* v. *Klein* (1967) 385 U.S. 511, 515 [17 L.Ed.2d 574, 577, 87 S.Ct. 625].) The privilege is as applicable to "links in a chain of facts" establishing a person's guilt as it is to direct proof of guilt. (*Hoffman* v. *United States* (1951) 341 U.S. 479, 488 [95 L.Ed. 1118, 1125, 71 S.Ct. 814].) ■ Refusal here, whether a communicative act or not, is not protected by the privilege because it is not coerced.

## II.

### *The Search and Seizure Claim*

Petitioner contends that under the United States and California constitutional protections against unreasonable searches and seizures, he cannot be punished for a refusal to grant permission to a search and seizure. He bases this contention on the case of *People* v. *Wetzel* (1974) 11 Cal.3d 104 [113 Cal.Rptr. 32, 520 P.2d 416]. In *Wetzel,* without a search warrant, but in "hot pursuit" of a criminal suspect, police officers knocked on defendant's door and requested permission to enter and search for the suspect. Defendant refused entry and was arrested for obstructing an officer in violation of section 148 of the Penal Code. The court stated that the officers had a right to enter without a warrant, as here they had a right to forcibly take petitioner's blood without his consent. However, the defendant in *Wetzel* had "the right to withhold consent to enter and, as long as entry was not sought on any other ground than with her consent she committed no impropriety and certainly not a violation of section 148." (11 Cal.3d at p. 110.)

The essential difference between this case and *Wetzel* is the existence of a statute which conditions the right to refuse on a penalty. Petitioner's attack must, therefore, be on the authority of the state to impose a condition on the right to refuse.

## III.

### *The Equal Protection and Due Process Claim*

Petitioner argues that application of section 23159 violates the guarantee to equal protection because inebriated drivers who refuse to submit to a chemical test may be punished more severely than inebriated drivers who consent to a test. He contends that since section 23159 directly affects liberty, it must satisfy the constitutional standard of strict scrutiny or it will be invalid. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 243-251 [131 Cal.Rptr. 55, 551 P.2d 375].)  Under this standard, the burden is on the state, which "must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose." (*Id.,* at p. 251, italics in original.)

As the People point out, however, the prerequisite to a valid equal protection claim is a showing that the state has adopted a classification that affects two or more similarly situated groups unequally. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].)  The People contend that the two groups under consideration here are not similarly situ-

ated. They both have been convicted of driving under the influence but one group has refused a test and the other has consented. Assuming that the People are correct and petitioner has not demonstrated a classification which will invoke the equal protection clauses of the United States and California Constitutions, that does not end the matter. As petitioner points out, the legislation affects a fundamental interest. ■ "[P]ersonal liberty is a fundamental interest, second only to life itself, as an interest protected under the California and United States Constitutions." (*People* v. *Olivas, supra,* 17 Cal.3d at p. 251.) ■ Substantive due process requires this court to apply a "strict scrutiny" test to legislation which significantly interferes with or impinges upon a fundamental constitutional right. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 78 [177 Cal.Rptr. 566, 634 P.2d 917].)

In *Hernandez,* the Supreme Court considered a substantive due process challenge to the penalty of license suspension for a refusal to take a chemical test for intoxication. The court held that driving was not a fundamental interest and rejected the application of "strict judicial scrutiny." Rather, the court applied a "rational basis" test and upheld the penalty. The United States Supreme Court also eschewed a strict scrutiny review of the penalty of suspension of driving privileges for refusal and held that suspension was a legitimate penalty, assuming procedural protections. (*Mackey* v. *Montrym* (1979) 443 U.S. 1, 18-19 [61 L.Ed.2d 321, 334-335, 99 S.Ct. 2612].)

■ We have not been referred to, nor has our research revealed, a statute in any other state which imposes a criminal penalty upon the refusal to consent to a chemical test for intoxication. We note first that California has not made the act of refusal a crime. The crime for which sanctions is imposed is the crime of driving under the influence. The penalty for that crime is enhanced if the defendant refused a test by requiring a period of confinement even though probation may have been granted.

The enhancement of the penalty for driving under the influence where a test has been refused does not violate constitutional principles of substantive due process. ■ The purpose of the implied consent statute is to fulfill the need for a fair, efficient and accurate system of detection and prevention of driving under the influence. (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; see also *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 77.) ■ That purpose is obviously thwarted by the inebriated driver who refuses the test. He has forced the police officers to risk the possible violence of a forcible test or to forego the best evidence of intoxication. He has thus proven to be more dangerous to the public than the inebriated driver who has consented to a test.

"[W]hen fundamental liberties are at stake, the test in a free society is whether there are 'less drastic means' available to accomplish the government's purpose." (*People* v. *Glaze* (1980) 27 Cal.3d 841, 847 [166 Cal.Rptr. 859, 614 P.2d 291].) The Legislature in enacting section 23159 found that the "state's drunk driving laws are not completely effective because of the refusal by many drivers to take the required chemical tests which show their intoxication." (Stats. 1985, ch. 735, § 1.) Petitioner does not challenge this finding nor suggest it is unsupported by the facts. Suspension of driving privileges alone have not proven sufficiently effective to persuade arrestees to consent to the test so the Legislature has chosen to enhance the penalties. Petitioner does not suggest a "less drastic means" to achieve the government's goal than the one chosen by the Legislature. The Legislature could have chosen to penalize all drivers who refused a lawful test. Rather, it chose only those who had actually been convicted of driving under the influence. We conclude that the statute meets the strict scrutiny test.

The alternative writ, having served its purpose, is discharged; the petition for a peremptory writ is denied.

Anderson, P. J., and Poché, J., concurred.

Petitioner's application for review by the Supreme Court was denied September 24, 1987.