Christopher MACKINNEY,
Plaintiff–Appellant,

v.

Garon NIELSEN, Dash Butler, Al
Littles, and City of Berkeley,
Defendants–Appellees.

No. 94–15438.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1995.

Decided Nov. 6, 1995.

Maureen Laflin, Supervising Attorney, Sheryle Musgrove, and Arthur Bistline, University of Idaho Legal Aid Clinic, Moscow, Idaho, for plaintiff-appellant.

Matthew J. Orebic, Deputy City Attorney, Berkeley, California, for defendants-appellees.

Before: PREGERSON, KOZINSKI and LEAVY, Circuit Judges.

PREGERSON, Circuit Judge:

## OVERVIEW

Christopher Mackinney appeals the district court's grant of summary judgment in favor of defendants Garon Nielsen, Dash Butler, Al Littles, and the City of Berkeley in his 42 U.S.C. § 1983 action. Mackinney alleges that his constitutional rights were violated when he was arrested and detained for writing on a sidewalk with chalk. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## FACTS

Mackinney is a resident of Berkeley, California. On September 17, 1992, Mackinney and a friend wrote on a public sidewalk in Berkeley with "sidewalk chalk," an allegedly washable, non-permanent material. Mackinney wrote: "A police state is more expensive than a welfare state—we guarantee it." As he was finishing writing this message, Berkeley police officers Davis and Tejada, driving in an unmarked car on their way to serve a search warrant, saw Mackinney and ordered him to stop writing. Before complying with this order, Mackinney underlined the last phrase of his message.

The officers pulled their car up to the sidewalk. Officer Davis stepped out of the car and told Mackinney that if he did not stop writing on the sidewalk he would be arrested. Mackinney, though he had already stopped writing, refused to *agree* to stop writing, asserting that his actions were legal. During this exchange, Berkeley Police Sergeant Nielsen arrived. Nielsen rushed to the scene and asked what Mackinney had said. Mackinney said that he told officer Davis that he was violating Mackinney's civil rights. Nielsen responded by grabbing the chalk from Mackinney's hand and throwing it behind him. He allegedly said to Mackinney, "I don't give a f—k about your civil rights."

Sergeant Nielsen ordered the officers to arrest Mackinney. Officer Davis arrested Mackinney and charged him with violating California Penal Code § 594, which prohibits defacing "with paint or any other liquid" or damaging property that is not one's own. The officers took Mackinney to the Berkeley jail and kept him there for three to four hours. He was then released on bail. He was not prosecuted for violating § 594 or any other statute.

Mackinney filed this suit under 42 U.S.C. § 1983 in the United States District Court for the Northern District of California.[1] Mackinney alleged that his constitutional rights were violated because he was arrested without probable cause, and because he was arrested for exercising his First Amendment right to free speech. The district court granted summary judgment in favor of the defendants. Mackinney now appeals.

## ANALYSIS

### A. Standard of Review.

We review a grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). We must determine whether the evidence viewed in a light most favorable to the

---

1. Title 42 U.S.C. § 1983 provides that "Every person who, under color of [state law] ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

non-moving party presents any genuine issues of material fact and whether the district court correctly applied the law. *Id.* We review the district court's order granting qualified immunity de novo. *Baker v. Racansky,* 887 F.2d 183, 185 (9th Cir.1989).

### B. Qualified Immunity for Defendant Nielsen.

The district court found that Sergeant Nielsen is entitled to qualified immunity. Qualified immunity protects law enforcement officials who reasonably believe they are acting lawfully in carrying out their duties. *Act Up! Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). Whether a defendant is entitled to qualified immunity turns on a two part inquiry: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Id.* The analysis under these two prongs will necessarily involve an inquiry into the substantive issue of whether Nielsen violated Mackinney's Fourth Amendment rights by arresting him without probable cause.

On the merits, the district court found that Nielsen did not have probable cause to arrest Mackinney under California Penal Code § 594, which prohibits damaging property. Instead the district court found that Nielsen did have probable cause to arrest Mackinney under California Penal Code § 148 for obstructing the officers in their line of duty. As to qualified immunity, the district court found Nielsen to be immune from suit because he "reasonably believed" his conduct to be lawful when he ordered Mackinney's arrest. We disagree and find that Nielsen is not entitled to qualified immunity and that he did not have probable cause to arrest Mackinney for violating either § 594 or § 148 of the California Penal Code.

#### 1. California Penal Code § 594.

It is undisputed that the Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits an officer from making an arrest without probable cause. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir.1984). Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime." *United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990) (citing *United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir.1986), *cert. denied,* 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986)).

Section 594, as it was worded in 1992, made it illegal to (1) deface "with paint or any other liquid," (2) damage or (3) destroy any real or personal property that is not one's own. It was not reasonable for Sergeant Nielsen to arrest Mackinney for a violation of § 594. Mackinney wrote on the sidewalk with chalk. Chalk is not "liquid," and there is no evidence that the sidewalk was "damaged." No reasonable person could think that writing with chalk would damage a sidewalk. In addition, if writing with chalk constitutes "damage," it is hard to imagine any defacement "with paint or other liquid" that would not also constitute damage. This reading would collapse the "defacement" provision of § 594 into the "damage" provision, violating the prohibition against construing statutes so as to render any of their provisions superfluous. *See Boise Cascade Corp. v. EPA,* 942 F.2d 1427, 1432 (9th Cir.1991).

#### 2. California Penal Code § 148.

Section 148 provides that: "Every person who willfully resists, delays, or obstructs any public officer ... in the discharge or attempt to discharge any duty of his or her office or employment" is criminally punishable.

##### a. The act of underlining.

A reasonable officer could not have believed that he or she had probable cause to arrest Mackinney under § 148 because he underlined the last part of his chalk message before complying with the police order to stop. Ruling on the merits, the district court found that the act of underlining the last word of his message "obstructed" the officers in the course of their duties because it inter-

fered with their order that Mackinney stop committing an act made illegal by an anti-graffiti statute, California Penal Code § 640.5(a).[2] The district court stated, "defendant Nielsen possessed the requisite probable cause to order the arrest of plaintiff for Penal Code § 148 when plaintiff refused to stop defacing the sidewalk." We disagree.

Mackinney's act does not establish probable cause for an arrest under § 148, and no reasonable officer could have thought otherwise. First, when the officers yelled to Mackinney to stop writing, they were still in their unmarked car. Mackinney makes the plausible claim that he did not know that it was the police who gave the order; because we are reviewing a grant of summary judgment against Mackinney, we must resolve any doubt about this issue in his favor. *Jesinger*, 24 F.3d at 1130. In *People v. Lopez*, the California Court of Appeals found that "[b]efore one can be found culpable [for resisting arrest under § 148] ... he or she must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer." 188 Cal.App.3d 592, 599, 233 Cal.Rptr. 207 (1986). The same reasoning applies to obstructing justice under § 148. No reasonable officer could have thought that he or she had probable cause to arrest Mackinney when it was apparent that Mackinney probably did not realize that the order he was failing to obey came from the police.

■ Second, when he was ordered to stop writing on the sidewalk, Mackinney refused to comply for only a few seconds. He finished underlining then immediately turned around. No reasonable officer could have thought that complying with a police order slowly could be a violation of § 148. It is well established under California law that even "an outright refusal to cooperate with police officers cannot create adequate grounds for [police] intrusion" without more. *People v. Bower*, 24 Cal.3d 638, 649, 156 Cal.Rptr. 856, 597 P.2d 115 (1979). Here the

officers had no grounds on which to arrest Mackinney other than his disobedience, which is insufficient under *Bower*.

Furthermore, in *People v. Cressey*, 2 Cal.3d 836, 841 n. 6, 87 Cal.Rptr. 699, 471 P.2d 19 (1970), the California Supreme Court stated that the refusal to open a door upon a *proper* police request, was not a violation of § 148. And in *Cressey*, the defendant never did capitulate. In contrast, Mackinney did ultimately comply with the police order to stop writing. Any reasonable officer would have known that they needed more than Mackinney's hesitation to arrest him. *Cf. People v. Wetzel*, 11 Cal.3d 104, 107–109, 113 Cal.Rptr. 32, 520 P.2d 416 (1974) (defendant who stood in doorway of apartment and refused to allow officers to enter did not violate § 148).

A reasonable person would not have thought that Mackinney was obstructing the officers by not immediately putting down his chalk. Of course, people must obey the police in most situations. But here, the police overreacted to Mackinney's momentary disobedience.

### b. The verbal protest.

The district court stated that "plaintiff's refusal to agree to stop defacing the sidewalk in violation of Penal Code § 640.5(a) effectively obstructed the officers in the course of their duties." Therefore, the court concluded, Nielsen reasonably believed that he had probable cause to arrest Mackinney and is entitled to qualified immunity. We disagree. We do not think that a reasonable officer could have thought that he or she had probable cause to arrest Mackinney for a violation of § 148 on the basis of the verbal exchange that occurred after Mackinney had stopped writing.

In *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court instructed courts ruling on qualified immunity to examine

---

**2.** California Penal Code § 640.5(a) provides that "[a]ny person who writes, sprays, scratches, or otherwise affixes graffiti on or in the facilities or vehicles of a government entity" is guilty of an infraction. The defendants cannot argue that the officers had probable cause to arrest Mackinney

under § 640.5(a) itself because California Penal Code § 853.5 only allows custodial arrests for infractions when the arrestee refuses to present identification or refuses to sign a promise to appear.

whether the "contours of the right" at stake in the action are sufficiently clear so that a reasonable official could understand that he or she is violating the right. Several cases have outlined the "contours" of the First Amendment right to challenge the police. The Supreme Court in *City of Houston, Texas v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), invalidated a Texas county's ordinance which made verbally challenging an officer in the line of duty unlawful. The Court stated that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* at 461, 107 S.Ct. at 2509. Unless the speech is likely to produce "a clear and present danger of a serious substantive evil," the Court stated, it is protected. *Id.* Indeed, the Court continued, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63, 107 S.Ct. at 2510.

Ninth Circuit law also clearly establishes the right verbally to challenge the police. In *Duran v. City of Douglas,* 904 F.2d 1372, 1378 (9th Cir.1990), we stated that police may not exercise "the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." We held in *Duran* that a police officer did not have probable cause to stop an individual for the obscene gestures and words he directed from his car towards the police officer and that the officer was not entitled to qualified immunity. "[C]riticism of the police is not a crime." *Id.* at 1377.

California law also gives citizens considerable latitude in confronting the police. In *Wetzel,* 11 Cal.3d at 107–109, 113 Cal.Rptr. 32, 520 P.2d 416, the California Supreme Court found that a defendant who stood in the doorway of an apartment and refused to allow officers to enter did not violate § 148.

These cases clearly establish a First Amendment right to challenge the police. Even when crass and inarticulate, verbal challenges to the police are protected. *Duran,* 904 F.2d at 1378. Officer Nielsen should have known that Mackinney's verbal protests could not support an arrest under § 148. It was unreasonable of him to think otherwise.

Police officers have a difficult job, and they deserve the respect of their community. But they in turn must respect the right of individuals in that community to question their government and the role of the police. A reasonable officer should have known that Mackinney simply was exercising that right.

## C. Fourth Amendment Claim— Probable Cause for Arrest.

Because Nielsen is not entitled to qualified immunity, we proceed to review the district court's discussion of the merits of Mackinney's case.

### 1. California Penal Code § 594.

As we stated above in the discussion of qualified immunity, Nielsen did not have probable cause to arrest Mackinney for a violation of § 594 because his actions did not "damage" the sidewalk.

### 2. California Penal Code § 148.

Mackinney's gesture of underlining the last part of his message did not "obstruct" the officers. In *People v. Quiroga,* 16 Cal. App.4th 961, 964, 20 Cal.Rptr.2d 446 (1993), *review denied,* Sept. 30, 1993, the police, responding to complaints of a noisy party, found the defendant in an apartment with several other people. When the defendant stood up from the couch, an officer ordered him to sit back down. The defendant *did not comply immediately.* He argued with the officer, refusing to sit down. Finally, according to the officer, he sat down again. Soon after, the officer ordered the defendant, who was allegedly reaching into the cushions of the couch, to keep his hands on his lap. Again the defendant initially refused to cooperate. When the officer later ordered the defendant to stand up, he refused "several times" until the officer pulled on his arm. *Id.*

The court in *Quiroga* found that these three instances of disobedience did not amount to a § 148 violation: "[I]t surely cannot be supposed that Penal Code section

148 criminalizes a person's failure to respond with alacrity to police orders." *Id.* at 966, 20 Cal.Rptr.2d 446. The instant case presents even less convincing evidence of a § 148 violation. When he was ordered to stop writing on the sidewalk, Mackinney refused to comply for a matter of seconds. During that time, the officers were still in their unmarked car, and Mackinney claims that he did not know that a police officer had given the order. Unlike the defendant in *Quiroga*, Mackinney stopped his offensive behavior shortly after the order and then addressed the officers. Also unlike the *Quiroga* defendant, he was not repeatedly defiant.

The district court relied on *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076 (8th Cir.1990), to support its conclusion that the officers had probable cause to believe that Mackinney was obstructing them. In *Foster*, the plaintiff was arrested because he did not move his car from an airport loading zone when asked three times to do so. The plaintiff tore up the parking ticket he was issued and resisted arrest by rolling up his windows and locking his doors. The court concluded that the officer had probable cause to arrest Foster for interfering with the officer's duty to keep traffic flowing. *Id.* at 1081.

But the holding in *Foster* is based explicitly on the plaintiff's refusal to move his car, which was in continuous violation of parking regulations, not on the plaintiff's verbal protests or his tearing up the parking ticket. Moreover, in *Foster*, 914 F.2d at 1081, the plaintiff disobeyed the officer for a lengthy period of time by keeping his car in a loading zone. Mackinney, in contrast, spent seconds finishing his writing before he complied with the officers. As we discussed above, the failure to comply immediately with an officer's requests is not a violation of § 148 under *Quiroga*, 16 Cal.App.4th at 966, 20 Cal.Rptr.2d 446.

Second, defendants would have us decide that Mackinney's refusal to verbally agree to stop writing on the sidewalk "obstructed" the officers. However, as is clear from our discussion above, verbally confronting the police is a right all Americans have under the First

Amendment. *See Hill*, 482 U.S. at 461, 107 S.Ct. at 2509; *see also Quiroga*, 16 Cal. App.4th at 966, 20 Cal.Rptr.2d 446.

### D. Supervisory Liability.

 Mackinney claims that police chief Butler is also liable for violating his constitutional rights because Butler had been advised of similar, past incidents where Mackinney's rights were violated by the police, and Butler took no steps to prevent the incident at issue here. Under § 1983, a supervisor may be liable if there exists either "(1) his or her personal involvement in the constitutional deprivation *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).[3]

 There is no evidence that Butler was personally involved in the incident at issue, so we must examine whether there was a causal connection between Butler's conduct and the alleged violation of constitutional rights. Supervisory liability can exist if Butler implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (quotations and citations omitted).

At most, we can draw an inference from the record that Butler knew that Mackinney had complained about past treatment he had received from the police as a result of writing with chalk on the sidewalk. But we are hard pressed to find any evidence of a policy that "repudiates" constitutional rights.

### E. Claim against Defendant Littles.

 Mackinney claims that Police Special Assistant Littles violated his constitutional rights by refusing to give Mackinney the benefit of a citation release from jail. While Mackinney was in jail, Littles told him that if he agreed to refrain from going out and marking the sidewalk, he would be given a

---

**3.** The defendants' brief does not assert a qualified immunity defense on behalf of Butler.

citation release, that is, he would be released on his written promise to appear pursuant to Cal.Penal Code § 853.6. Mackinney states that he agreed, but that Littles then refused to issue a citation release because, Littles said, Mackinney's "attitude" had not improved. Littles, in contrast, claims that he did not issue the citation release because Mackinney would not agree to refrain from drawing on the sidewalk. When Mackinney posted bail he was released, after spending between three and four hours in jail.[4]

Mackinney claims that he was improperly held in custody for three to four hours. We can examine such claims of improper confinement or false imprisonment using either a due process, *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), or a Fourth Amendment analysis. *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1479 (9th Cir.1993), *cert. denied sub nom, Killeen v. Hallstrom*, — U.S. ——, 114 S.Ct. 549, 126 L.Ed.2d 450 (1993); *Kanekoa v. City and County of Honolulu*, 879 F.2d 607, 609 (9th Cir.1989), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 460 (1991). Here, as in other cases where a plaintiff has challenged the lawfulness of his or her confinement prior to a judicial determination of probable cause for his or her warrantless arrest, we will use a Fourth Amendment analysis. *Gerstein v. Pugh*, 420 U.S. 103, 111–14, 95 S.Ct. 854, 861–63, 43 L.Ed.2d 54 (1975); *Hallstrom*, 991 F.2d at 1480, 1484; *see also Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir.1992).[5]

Defendant Littles asserts that he is entitled to qualified immunity, and the district court so found. California Penal Code § 853.6 outlines the procedures for handling misdemeanor arrestees. It specifies that misdemeanor arrestees should be released without bail upon signing a written promise to appear. One exception to this rule occurs when there is a "reasonable likelihood" that the offense will continue. In a qualified immunity analysis, we must ask whether a reasonable officer in Littles's circumstances could have believed that it was lawful to deny Mackinney a citation release. California law was clearly established—misdemeanor arrestees were to be released upon signing a written promise to appear if they posed little risk of continuing their offense. If we accept Mackinney's version of the facts, as we must when we review a summary judgment order, then a reasonable officer would have released Mackinney because he agreed to not write on the sidewalk. As discussed below, Supreme Court precedent regarding the Fourth Amendment prohibition against unnecessary detention was also clearly established. Littles was not reasonable in thinking his detention of Mackinney until Mackinney's "attitude" improved was lawful. Therefore, Littles is not entitled to qualified immunity.

We apply a Fourth Amendment analysis in determining the validity of a warrantless arrestee's detention prior to a magistrate's determination of probable cause to arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 55–56, 111 S.Ct. 1661, 1669–70, 114 L.Ed.2d 49 (1991). In *Hallstrom*, 991 F.2d at 1479, we analyzed a claim of unreasonable detention. We noted that, under *McLaughlin*, when a plaintiff contests a detention that lasted under 48 hours, she bears the burden of proving that "her probable cause determination was delayed unreasonably." *Id.* (quoting *McLaughlin*, 500 U.S. at 56, 111 S.Ct. at 1670). We further noted that one example the Supreme Court gave of an "unreasonable delay" is "delay motivated by ill will against the arrested individual." *Id.* at 1480 (quoting *McLaughlin*, 500 U.S. at 56, 111 S.Ct. at 1670).

Viewing the evidence in the light most favorable to Mackinney, there is a genuine

---

**4.** Mackinney does not challenge the constitutionality of California's booking procedures. Thus, his claim is different from the issue we examined in *Higbee v. City of San Diego*, 911 F.2d 377, 379–80 (9th Cir.1990). Rather Mackinney asserts that he would have been released had Littles followed those procedures correctly.

**5.** Although Mackinney does not make a Fourth Amendment argument against Littles, we construe his complaint to include one. Cases analyzing improper confinement have used both due process and Fourth Amendment analyses, *see Villanova*, 972 F.2d at 797, and we generally construe pro se complaints broadly. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

issue of material fact as to whether the hours he spent in jail were motivated by Littles's hostility toward him. Littles allegedly said that he would not issue a citation release because Mackinney's "attitude" had not improved. This statement is evidence of Littles's ill will toward Mackinney. Therefore, we remand for a determination as to whether Mackinney's Fourth Amendment rights were violated by Littles's refusal to release him on his written promise to appear.

### F. Claim Against City of Berkeley.

 Mackinney claims that the City of Berkeley was deliberately indifferent to violations of his constitutional rights. A municipality can be held liable under 42 U.S.C. § 1983 when the execution of its policies, express or implied, has directly caused the alleged constitutional violation. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The district court found that Mackinney had not shown any evidence that the city had a policy which resulted in violations of Mackinney's rights.

To succeed, a § 1983 plaintiff must show that there is a direct link between the city policy and the constitutional violation. *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). The plaintiff can show this link by proving that the policy itself is unconstitutional or that the city made a "deliberate" or "conscious" choice to fail to train its employees adequately. *Id.* at 389, 109 S.Ct. at 1205.

Mackinney provides no evidence that Berkeley had a policy of arresting people for writing on the sidewalk. But Mackinney points out that the incident at issue here was not the first time the city's and the police department's conduct regarding First Amendment rights was questioned. Thus there appears to be a genuine issue of material fact as to whether the city made a "deliberate" choice not to train its officers to be sensitive to the First Amendment rights of Berkeley citizens, thereby infringing on Mackinney's constitutional rights. We reverse and remand for a consideration of this claim.

### G. First Amendment Claim.

Mackinney also asserts that California Penal Code § 640.5 is facially unconstitutional. He asserts that the statute is overbroad, vague, and directed solely at speech because physical damage to property is already prohibited by § 594. The district court failed to address this argument. We remand for a consideration of this claim.

### CONCLUSION

We find that the district court erred in holding that Mackinney's Fourth Amendment rights were not violated when he was arrested for writing on the sidewalk in chalk, and that Sergeant Nielsen is entitled to qualified immunity as to the arrest. Police Chief Butler is not liable for these violations, but the City of Berkeley may be. Affirmed in part, reversed in part, and remanded for further proceedings consistent with the views herein expressed.