Marvetia Lynn RICHARDSON, Latoya Norman, Samonia Nelson–Calip and Lamona Nelson as guardian ad litem for "KC," a minor, Plaintiffs,

v.

CITY OF ANTIOCH, City of Antioch Police Department, Police Chief James Hyde, Officer Santiago Martinez, Jr., Officer Jason Vanderpool, Officer Jason Joannindes, Sgt. Thomas Fuhrmann and Does 1–100, inclusive, Defendants.

No. C 08–03470 JSW.

United States District Court, N.D. California.

July 13, 2010.

**1136**

Quinton Blair Cutlip, Meis & Associates, San Francisco, CA, for Plaintiffs.

James V. Fitzgerald, III, Noah G. Blechman, McNamara, Ney, Beatty, Slattery, Borges & Brothers LLP, Walnut Creek, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JEFFREY S. WHITE, District Judge.

This matter comes before the Court upon consideration of the motion for partial summary judgment filed by Defendants City of Antioch, City of Antioch Police Department, Police Chief James Hyde, Officer Santiago Martinez, Jr., Officer Jason Vanderpool, Officer Jason Joannindes, Sgt. Thomas Fuhrmann and Does 1–100, inclusive (collectively "Defendants") and the cross motion for partial summary judgment filed by Plaintiffs Marvetia Lynn Richardson, Latoya Norman, Samonia Nelson–Calip and Lamona Nelson, as guardian ad litem for "KC," a minor (collectively "Plaintiffs"). Having considered the parties' pleadings, relevant legal authority, the Court HEREBY DENIES Defendants' motion for partial summary judgment and GRANTS Plaintiffs' cross motion for partial summary judgment.

### BACKGROUND

On July 18, 2008, Plaintiffs filed their complaint alleging violations of 42 U.S.C. § 1983 against the City of Antioch, the Antioch Police Department and individual officers. Plaintiffs claim that Defendants violated their rights, specifically: (1) Fourth Amendment rights to be secure from unreasonable search and seizure, not to be subjected to excessive force during the course of an arrest, and the right not to be retaliated against for asserting Fourth Amendment rights; (2) Fourteenth Amendment rights not to be deprived of

due process of law or the equal protection of the law; (3) retaliation against Plaintiff Richardson for exercising her rights guaranteed under the First Amendment; (4) conspiracy to deprive Plaintiffs of the rights and privileges secured by the Constitution; (5) negligent failure to prevent the deprivation of Plaintiffs' rights; (6) discrimination; (7) assault; (8) battery; (9) false arrest; (10) intentional infliction of emotional distress; (11) violation of California Civil Code § 51.7; (12) violation of California Civil Code § 52.1; and, (13) negligent hiring, training and retention by Defendants City of Antioch, City of Antioch Police Department and Police Chief Hyde. The City's liability for these actions is premised on *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiffs' claims arise from an incident that occurred in the early morning of June 7, 2007. On that date just before 1:00 a.m., the tenants living at 1947 Mokelumne Drive in Antioch, California, called the police department to complain about noise in the house. (Declaration of James V. Fitzgerald ("Fitzgerald Decl."), Ex. S (Declaration of Jason Vanderpool) at ¶ 2.) Several guests, including children, were staying with Plaintiff Marvetia Lynn Richardson ("Richardson"), an inspector with the San Francisco Police Department. (Declaration of Marvetia Lynn Richardson ("Richardson Decl.") at ¶¶ 2, 10; Declaration of Samonia Nelson ("Nelson Decl.") at ¶ 4; Declaration of KC ("KC Decl.") at ¶ 5; Declaration of Latoya Norman ("Norman Decl.") at ¶ 2; Declaration of Nolan Satterfield ("Satterfield Decl.") at ¶ 3.) Richardson, an African–American woman, owned the home in a predominantly White neighborhood in Antioch. (Richardson Decl. at ¶ 3.) On March 31, 2007, Richardson had served her upstairs tenants with a 30–day notice to quit and the tenants had contacted the police numerous times complaining about their alleged treatment in the house. (*Id.* at ¶¶ 5–9.) None of the previous visits had resulted in any further action. However, on June 7, 2010, the Antioch police responded to the tenants' 911 call to find the house filled with Richardson's guests: Latoya Norman, Ms. Norman's three young children who were three, five and eight, a family friend named Nolan Satterfield, Samonia Nelson, Richardson's girlfriend and her two daughters, who were six and fourteen, as well as a teenage cousin. The children and adults, with the exception of Richardson, were planning to go to Six Flags/Marine World the next morning. (Richardson Decl. at ¶ 11; Nelson Decl. at ¶¶ 4, 5; Norman Decl. at ¶¶ 2, 3; Satterfield Decl. at ¶ 3.)

Responding to the 911 call citing a fight or disturbance, the police arrived at the house at approximately 1:09 a.m. (Fitzgerald Decl., Ex. C; Ex. D (Declaration of Santiago Martinez) at ¶ 3.) The officers knocked on the door, were let in by one of the house guests, and witnessed the hostility between the house guests and the tenants. (*Id.*, Ex. D at ¶ 3; Declaration of Quinton B. Cutlip ("Cutlip Decl."), Ex. 5 (Deposition of Jason Vanderpool) at 55:17–57:18.) Richardson was asleep in her bedroom at the time. (Richardson Decl. at ¶¶ 10–13; Norman Decl. at ¶¶ 5, 7.) The tenants complained that the guests, who were strangers to them, were making loud noises, preventing them from going to sleep, and threatening them. (Cutlip Decl., Ex. 5 at 58:14–25; 65:13–23.) At that point, one of the guests woke up Richardson who confirmed that the people in her home were indeed her invited guests. (Richardson Decl. at ¶ 13.) She also indicated that Nelson was her girlfriend. After an unpleasant exchange of words with the officers, Richardson requested that the officers leave her home and not return without a warrant. (Cutlip Decl., Ex. 5 at 68:21–69:17.)

After approximately five to ten minutes, the officers left the house, believing the incident to be resolved. (*Id.*, Ex. 11.) After the police left, Richardson asked her guests to shut everything down and go to bed as it was late and she wanted no further disturbances. (Richardson Decl. at ¶ 14.) The officers walked across the street and, after talking for about five minutes by their cars, heard loud noises from the house and heard someone yell, "call the police." (Cutlip Decl., Ex. 5 (deposition of Santiago Martinez) at 89:2–20; Ex. 6 at 114:3–22.) At that point, the officers called for a supervisor and the tenants ran out of the house. (*Id.*, Ex. 6 at 115:8–12; 117:13–21.)

The tenants left the house at 1:24 a.m. and were visibly upset. After calming them down, Officer Martinez started the audio recorder in his shirt pocket which recorded the rest of the incident. (Cutlip Decl., Ex. 6 at 134:16–21.) The tenants stated that the house guests had entered their room and threatened them and that they were scared. (Fitzgerald Decl., Ex. D at ¶ 9.) After the tenants left the home, it was relatively quiet from inside the house. (Cutlip Decl., Ex. 1; Ex. 11 at 16.) The officers asked the tenants for their version of events and inquired whether there might be firearms in the house due to Richardson's position as a police officer. (Fitzgerald Decl., Ex. I at 1–7.) The officers began to knock at the door to gain entry, but heard the house guests inside deny them access. (Cutlip Decl., Ex. 11 at 16; Fitzgerald Decl., Ex. G at 3.) The police thought they heard a vacuum cleaner start running in the house. (Cutlip Decl., Ex. 1; Fitzgerald Decl., Ex. G at 3.) [1]

After the officers investigated whether there was another way into the house,

spoke with the tenants, and knocked and announced several times, did they decide to enter the home without a warrant. (Cutlip Decl., Ex. 1.) The entry was made at 1:50 a.m., approximately 26 minutes after the tenants left the home. (*Id.*) Upon entry, the police tried to gather the house guests in one room. The audio tape of the incident reveals that the officers yelled at KC to wake up three times and to get up four times in rapid succession. (*Id.*) After 25 seconds, during which time KC was unresponsive, Officer Martinez ordered her arrested for "pretending to be asleep." (*Id.*; Ex. 6 at 163:14–164:15; 221:15–222:18.) There is evidence that Latoya Norman complained about being handled roughly by the officers and Richardson was tased in her home. (Fitzgerald Decl., Ex. G; Norman Decl. at ¶ 25; Richardson Decl. at ¶¶ 15–18.)

The Court shall address additional facts as necessary in the remainder of this order.

## ANALYSIS

### A. Legal Standards Applicable to Motions for Summary Judgment.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the

---

1. Given the timing, the sound the officers heard was instead most likely an air mattress being inflated. (Norman Decl. at ¶¶ 19–20; Satterfield Decl. at ¶ 19.) However, the officers outside presumed it was a vacuum cleaner.

case. *Id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

**B. Fourth Amendment Claims Relating to the Warrantless Entry.**

■ Both parties move for summary judgment regarding whether the Officer Defendants' second, warrantless entry was lawful. The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); U.S. Const. amend. IV. The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual. *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1496 (9th Cir.1996). Overnight guests are afforded the same protections under the Fourth Amendment as owners of the home. *Minnesota v. Olson,* 495 U.S. 91, 98–100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). It is well established that " 'searches and seizures inside a home without a warrant are presumptively unreasonable.' " *LaLonde v. County of Riverside,* 204 F.3d 947, 954 (9th Cir.2000) (quoting *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). The presumption, however, is not irrebuttable. *Hopkins v. Bonvicino,* 573 F.3d 752, 763 (9th Cir.2009). Exceptions are "narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home." *United States v. Stafford,* 416 F.3d 1068, 1073 (9th Cir.2005).

■ "There are two general exceptions to the warrant requirement for home searches: exigency and emergency." *United States v. Martinez,* 406 F.3d 1160, 1164 (9th Cir.2005). The " 'emergency' exception stems from the police officers' 'community caretaking function' and allows them 'to respond to emergency situations' that threaten life or limb; this exception does *'not* [derive from] police officers' function as criminal investigators.' " *Hopkins,* 573 F.3d at 763 (citing *United States v. Cervantes,* 219 F.3d 882, 889 (9th Cir. 2000) (emphasis added).) "By contrast,

the 'exigency' exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is 'necessary to prevent ... the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' " *Id.* (citing *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.1984) (en banc)). It is a also well-settled exception to the warrant requirement that an "individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Cormier,* 220 F.3d 1103, 1112 (9th Cir.2000), *cert. denied,* 531 U.S. 1174, 121 S.Ct. 1146, 148 L.Ed.2d 1009 (2001).

Because it is undisputed that the Defendant Officers entered Richardson's home for the second time without a warrant, unless a recognized exception to that requirement justifies their entry, Plaintiffs can establish the violation of a constitutional right.

**1. The Officers Did Not Have Valid Consent to Enter.**

It is clear that an individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search. *See id.; see also Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). In *Georgia v. Randolph,* the Supreme Court reiterated this rule: "The Fourth Amendment recognizes a valid warrantless entry and search

of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (citations omitted). The Court, however, also held that, as between a wife's consent to a search of the family residence and her husband's refusal to consent, "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Id.* The cooperation of one occupant "adds nothing ... to counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place." *Id.* at 115, 126 S.Ct. 1515.

■ Here, there is no dispute that the tenants gave their consent to enter the house, but the guests and the homeowner herself refused to give their consent. Richardson had previously informed the Officers that they should not enter her home without a warrant. There is no dispute that her house guests reiterated that position when the Officers began to knock and announce their presence. There is no dispute that the Officers heard the occupants deny them admission and reiterate the need for a warrant to enter.[2] According to the explicit holding in *Randolph,* the tenants' consent, counter to the other occupants' objections to the entry, does not qualify as a exception to the warrant requirement under the Fourth Amendment. *See id.*

---

**2.** In addition, Defendants' repeated assertion that Plaintiffs' non-compliant behavior—their refusal to open the door without a warrant—does not constitute grounds for the search. *See, e.g., People v. Wetzel,* 11 Cal.3d 104, 109, 113 Cal.Rptr. 32, 520 P.2d 416 (1974) ("[R]efusal to consent to a request to enter [an] apartment ... cannot constitute grounds for a lawful arrest or subsequent search and seizure.") Defendants may not use the fact that Plaintiffs asserted their Fourth Amendment rights as justification for the subsequent deprivation of those very same rights.

### 2. Emergency and/or Exigency Exception.

The Defendant Officers rely primarily on the emergency and/or exigency exceptions to the warrant requirement to assert they were justified in entering Richardson's home. Defendants argue that they were confronted by a "series of grave issues" and an "alarming situation" which "led them to objectively and reasonably believe that they needed to enter Richardson's home (1) to arrest certain felony suspects inside Richardson's home based on probable cause, consent and exigent circumstances, and (2) to prevent violence and restore order based on an emergency situation that required their immediate response." (Motion at 10.) Accordingly, without valid consent from the occupants of the home, the Defendant Officers rely on the need to prevent violence based on the emergency exception to the warrant requirement and the need to arrest and prevent escape of the felony suspects and to prevent the destruction of evidence based on the exigency exception to the warrant requirement.

### a. Emergency doctrine.

■■■ Under the emergency doctrine, "law enforcement must have an objectively reasonable basis for concluding that there is an immediate need to protect others or themselves from serious harm." *United States v. Snipe*, 515 F.3d 947, 951–52 (9th Cir.2008). An action is considered reasonable under the Fourth Amendment, "regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d

168 (1978) (emphasis added)). The officer's subjective motivation is irrelevant. *Id.* (citations omitted). The court is tasked with making the determination "whether or not the emergency exception applies in any given situation based on the totality of the circumstances, and, as with other exceptions to the warrant requirement, the Government bears the burden of demonstrating that the search at issue meets those parameters." *Stafford*, 416 F.3d at 1074.

■■■ Here, the Defendant Officers contend that they were faced with a set of circumstances that, taken all together, created an objectively reasonable basis for concluding there was an immediate need to protect others from serious harm. (*See* Fitzgerald Decl., Ex. D (Martinez Decl.) at ¶¶ 13, 14; Ex. I (Fuhrmann Decl.) at ¶¶ 7, 10; Ex. L (Fuhrmann Depo.) at 132:14–22; Ex. S (Vanderpool Decl.) at ¶¶ 9, 11.[3]) The Officers argue that they understood from the alleged tenant victims that there were adults in the home who had threatened their lives, that there were children in the home, and lastly, that due to her position as a police officer, Richardson may have had access to a firearm. There are no disputes of material fact about the circumstances the officers faced. Having carefully reviewed the record as well as listened to the contemporaneous recording of the incident, the Court concludes that, given the totality of the circumstances, there was no immediate need to protect anyone from harm. The alleged victims were outside the home, safely in the company of the police. The children in the home had been previously identified as the homeowners' guests. There were no sounds of threats of violence or continuing

---

**3.** The court notes Plaintiff's evidentiary objections. To the extent the Court relies on the evidence Plaintiffs object to, the objections are overruled. Whether or not a true reflec-

tion of the events, the declarations are admissible to show the Officers' perceptions of the totality of circumstances.

danger emanating from the house. Furthermore, the time that elapsed from the tenants' exit until the police officers entered the home was 26 minutes, evidence which counters the police officers' opinions that danger was imminent. The danger, if any, had long since dissipated and there was not any present danger manifest which objectively necessitated the forceful intrusion into the home without a warrant.

In *Brigham City*, the Court found that the police made a lawful entry when they could see the forceful restraint of a minor, violence perpetrated against someone who was spitting up blood, and the officers' efforts to knock and announce could not be heard due to the loud party going on at the residence. 547 U.S. at 403, 126 S.Ct. 1943. However, in this matter, the only alleged victims were safely outside with the police and the officers took an additional 26 minutes to kick in the door of an otherwise silent home. Here, the Court finds that the Defendant Officers have failed to meet their burden of demonstrating, based on the facts viewed in the light most favorable to them, that the emergency exception applies based on the totality of the circumstances. *See Stafford*, 416 F.3d at 1074.

### b. Exigent Circumstances.

 In the alternative, the Defendant Officers contend that the entry was justified in order to investigate a crime under the "exigent circumstances" exception to the warrant rule. Exigent circumstances obviating the requirement of a warrant can include "the need to assist persons who are seriously injured or threatened with such injury." *Brigham City*, 547 U.S. at 403, 126 S.Ct. 1943. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Accordingly, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403, 126 S.Ct. 1943 (citing *Mincey*, 437 U.S. at 392, 98 S.Ct. 2408).

 The exigency exception applies where police have probable cause and where "a reasonable person [would] believe that the entry ... was necessary to prevent physical harm to the officers or other persons.'" *See LaLonde*, 204 F.3d at 956 (citing *McConney*, 728 F.2d at 1199) (holding that a warrantless entry may be justified when "the officers have probable cause *and* are presented with exigent circumstances."); *see also United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir. 1978) ("[A]bsent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest."). Exigent circumstances have been defined as an emergency situation requiring swift action to prevent physical harm to persons, serious property damage, the escape of a suspect, or destruction of evidence. *People v. Ramey*, 16 Cal.3d 263, 276, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976); *see also McConney*, 728 F.2d at 1199 (holding that exigent circumstances can also include "the destruction of relevant evidence."). "There is no litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." *Id.* Again, the subjective motivations of the individual officers have no bearing on whether a particular seizure is considered reasonable under the Fourth Amendment. *See Brigham City*, 547 U.S. at 404, 126 S.Ct. 1943.

 As the Court has already found, there was no exigency based on an imminent emergency as any imminency had dissipated by the passage of time, the se-

curity of the alleged victims, and the absence of any continuing danger or even apparent threat of danger. However, the Defendant Officers also claim that the warrantless entry was necessary to prevent the possible escape of unidentified suspects or the destruction of evidence. (*See* Fitzgerald Decl., Ex. D (Martinez Decl.) at ¶ 13; Ex. I (Declaration of Thomas Fuhrmann) at ¶¶ 9, 10; Ex. L (Deposition of Thomas Fuhrmann) at 135:23–136:21.) To the extent there was a valid fear that any suspects could escape, there is no dispute that there were four uniformed police officers present, each of whom could have guarded the perimeter of the home. Further, the officers' claim that they reasonably feared the destruction of evidence is not tenable. The alleged penal violations at issue here concerned the making of threats to the tenants, for which there would be no physical evidence. Second, to the extent that the sound of the air mattress being inflated, which the officers mistook for a vacuum cleaner, alerted the officers that debris was being cleaned up, there is no reasonable basis to presume the possible debris was consequential evidence or that its being moved was significant. Should there have been a destroyed door to the tenants' room, that would have been sufficient evidence of an attack and moving any dust or debris from the floor to the vacuum cleaner is inconsequential.

Based on the record of undisputed facts, the Court finds that there was no reasonable or objective apprehension of exigency. Without consent, emergency or exigency, there no cognizable exception to the warrant requirement permitting the Defendant Officers access to the home without a valid warrant. Accordingly, the Court DENIES the Defendants' motion for summary adjudication on the Fourth Amendment claim to be free from unreasonable search and seizure and GRANTS Plaintiffs' motion for summary adjudication on the same claim.

### 3. Qualified Immunity.

Defendants assert that they are qualifiedly immune from suit on Plaintiffs' Section 1983 claims. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* Accordingly, courts have repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*). Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. *Harlow*, 457 U.S. at 812, 102 S.Ct. 2727.

In *Saucier v. Katz*, the Supreme Court stated that a court called upon to rule on the issue of qualified immunity must ask the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111

S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, if the Court finds that the facts would show the violation of a constitutional right, the next inquiry is to determine "whether the right was clearly established." *Id.* Thus, a court "must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred." *Mendoza v. Block,* 27 F.3d 1357, 1360 (9th Cir.1994) (citing *Hallstrom v. Garden City,* 991 F.2d 1473, 1482 (9th Cir.1993)); *see also Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997) (holding that the issue whether an aspect of law was clearly established must be determined as of the time of the alleged conduct at issue). The Supreme Court in *Pearson v. Callahan* determined that the specific order of the qualified immunity inquiry is not required and held that "judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S.Ct. at 818.

A constitutional right is clearly established for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear that [at the time the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. However, government of-

ficials are not "charged with predicting the future course of constitutional law." *Ostlund v. Bobb,* 825 F.2d 1371, 1374 (9th Cir.1987).

A court should then address the question "whether, under that clearly established law, a reasonable [official] could have believed the conduct was lawful." *Id.* This inquiry must be undertaken in the light of the specific context of the case. *Saucier,* 533 U.S. at 194, 121 S.Ct. 2151. In deciding whether the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' ... or whether the state of the law [at the time] gave 'fair warning' to the officials that their conduct was unconstitutional." *Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir.2002) (quoting *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151). Although the inquiry is undertaken in the specific context of the case, the fact that no case has found a constitutional violation under the exact facts alleged does not imply that the law is not clearly established. *Phillips v. Hust,* 477 F.3d 1070, 1079–1080 (9th Cir.2007). When there is no specific, binding precedent on the exact question, the Ninth Circuit looks "to all available decisional law, including the law of other circuits and district courts." *Inouye v. Kemna,* 504 F.3d 705, 714 (9th Cir.2007).

▪ Here, the Court has found that the Defendant Officers violated Plaintiffs' constitutional rights to be secure in their persons and effects against unreasonable search and seizure under the Fourth Amendment. There is no question that the "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton,* 445 U.S. at 590, 100 S.Ct. 1371. Although the presumption is not irrebuttable, the exceptions are "narrow and their boundaries are rigorously guarded to prevent any expansion that

would unduly interfere with the sanctity of the home." *Stafford,* 416 F.3d at 1073. From the record of undisputed facts presented to the Court, it is clear that the situation did not require swift action to prevent the escape of a suspect, the destruction of evidence, or to guard against physical harm to anyone, as the alleged victims were safely outside with the police. Therefore, neither the emergency nor the exigency exceptions to the warrant requirement were satisfied. Further, it is also clear from clearly established precedent that valid consent was not obtained solely from the complaining tenants, as the homeowner and the house guest occupants repeatedly refused to grant consent to enter the home to the police officers. Therefore, the Court finds the officers violated a constitutional right and a reasonable official could not have believed, under clearly established law, that the conduct was lawful. *See Saucier,* 533 U.S. at 194, 121 S.Ct. 2151. Accordingly, the Court finds as a matter of law that Defendant Officers are not entitled to qualified immunity for their illegal entry on June 7, 2007 and DENIES their motion for partial summary judgment on this ground.[4]

### C. Remainder of Defendants' Motion for Summary Adjudication.

#### 1. Count Ten—False Arrest.

■ Defendants move for summary adjudication on Plaintiffs' tenth cause of action for false arrest for the arrests of Latoya Norman and Lamona Nelson. Defendants contend that the arrests based on

the Penal Code for terrorist threats, vandalism and possession of stolen property were valid and that Plaintiffs' claim for false arrest should be dismissed. Plaintiffs argue that the tenants' version of events was inherently unbelievable due to the numerous previous complaints about which the police officers were aware. Because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim. *See Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997) ("In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party.").

#### 2. Count Two—Equal Protection Claim.

■ Defendants contend that there is no evidence that the police officers discriminated against Plaintiffs based on race or sexual orientation. Plaintiffs contend that the police officers became discernably more rude after Richardson indicated that Samonia Nelson was her girlfriend. Richardson also testified that the officers made racist comments, particularly about her ownership of the home, and behaved in a racist manner. Again, because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim. *See id.*[5]

---

4. The Court also DENIES Defendants' motion as it pertains to all claims related to the issue of the entry: retaliation for asserting Fourth Amendment rights, conspiracy (42 U.S.C. § 1985(3)), negligent failure to prevent constitutional violation (42 U.S.C. § 1986), discrimination (42 U.S.C. § 2000d), intentional infliction of emotional distress, and negligent hiring/training. (*See* Motion at 24.)

5. In the alternative, Defendants contend that Plaintiffs' substantive due process claim fails under the Fourteenth Amendment because of the "more-specific-provision" rule as set forth in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court finds this argument unpersuasive. There remain claims in the complaint that exceed the scope of the Fourth Amendment claims.

### 3. Count Three—First Amendment Retaliation Claim.

 Defendants contend that there is no evidence in the record to support the allegation that they retaliated against Plaintiff Richardson because of her speech or that the officers reacted to Richardson's previous admonitions to them to retrieve a warrant before entering her home. Plaintiff contends that the officers reacted to her admonitions negatively and retaliated against based on her speech. Once again, because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim. *See id.*

### 4. Liability of Officer Jason Joannindes.

 Defendants argue that the claims against Officer Jason Joannindes should be dismissed because there is no evidence that he directly participated in any of the alleged unlawful activity. However, Plaintiffs allege that Officer Joannindes was at the residence, unlawfully entered the home without a warrant, and was an "integral participant" in the alleged violations. *See Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir.2004). Plaintiffs further contend that Officer Joannindes was involved in the treatment of Latoya Norman who pleaded for Defendants to be careful with her previously injured arm. Due to the presence of disputed material facts, the Court DE-NIES Defendants' motion as to Officer Joannindes.

### D. Remainder of Plaintiffs' Motion for Summary Adjudication.

#### 1. No Probable Cause to Arrest KC.

 Plaintiffs contend that KC was arrested without probable cause in violation of the Fourth Amendment. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco,* 266 F.3d 959, 965 (9th Cir.2001) (citing *Larson v. Neimi,* 9 F.3d 1397, 1400 (9th Cir.1993)). The test for whether probable cause exists is whether "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *United States v. Bernard,* 623 F.2d 551, 559 (1980) (internal quotation and citations omitted). A determination as to whether probable cause exists requires a "practical, commonsense" decision based on the totality of the circumstances, including the veracity, basis of knowledge and reliability of the information provided by informants. *See United States v. Jensen,* 425 F.3d 698, 704 (9th Cir.2005) (citing *Illinois v. Gates,* 462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).[6]

---

6. "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *United States v. Mota,* 982 F.2d 1384, 1388 (9th Cir.1993). Under California law, probable cause to arrests exists when facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *People v. Adams,* 175. Cal.App.3d 855, 861, 221 Cal.Rptr. 298 (1985). The test under California law "is very similar to the Fourth Amendment test applied by [the Ninth Circuit], which provides that '[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Peng v. Mei Chin Penghu,* 335 F.3d 970, 976 (9th Cir.2003) (quoting *United States v. Buckner,* 179 F.3d 834, 837 (9th Cir.1999)).

According to the uncontested facts in the record, KC was Richardson's house guest who was staying the night with the plan to go to Great America in the morning with her family. KC was 14 years old at the time of the incident. After the first visit from the police from approximately 1:09 a.m. to 1:19 a.m., Plaintiffs shut down their activities for the evening and put the children to sleep. After the officers left the first time, KC and her cousin went into the downstairs bedroom and went to bed. At approximately 1:50 a.m., the police officers broke the door down and entered the home. The officers entered her room and announced their presence, but KC remained under the covers and did not immediately get up when Officer Martinez ordered her to "wake up." The simultaneous audio tape of the incident reveals that 25 seconds elapsed between the time the officer ordered her to wake up and the time he ordered her arrested for allegedly pretending to be asleep.

The Court finds that the undisputed circumstances of KC's arrest fail to provide sufficient facts to establish probable cause for a reasonable officer to order her arrest. In *Mackinney v. Nielsen*, the Ninth Circuit found that an arrest for a momentary refusal to cooperate with police officers was insufficient to create adequate grounds for police intrusion. 69 F.3d 1002, 1006 (9th Cir.1995). In *Mackinney*, the plaintiff was only momentarily non-compliant with the police officers' order to refrain from drawing on the sidewalk with chalk. *Id.* Similarly here, upon the police officers' entry into an otherwise quiet home, at nearly 2:00 in the morning, after children had been put to sleep at least thirty minutes earlier, the officers arrested KC for "pretending to be asleep." No more than 25 seconds elapsed from the time the officers announced their presence in KC's bedroom and the time she was arrested for failing to comply with their demands. Just as the court found in *Mac-*

*kinney*, although "people must obey the police in most situations, ... the police overreacted to [plaintiff's] momentary disobedience." 69 F.3d at 1006. Accordingly, the Court finds the arrest of KC was objectively unreasonable and GRANTS Plaintiffs' motion for partial summary judgment on this claim. Based on clearly established precedent, the Court also finds that Defendants are not entitled to qualified immunity for the arrest of KC. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

## 2. Cause of Action Under California Civil Code Section 52.1.

California Civil Code Section 52.1 provides a private right of action for damages against any person who "interferes [or] attempts to interfere by threats, intimidation, or coercion" with the exercise or enjoyment of a legal right. Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal. Rptr.2d 844, 949 P.2d 941 (1998).

The Court has found that the entry into the house as well as the arrest of KC were unconstitutional, the only issue is whether the entry and arrest were made attendant with threats, intimidation or coercion. The test is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence. *See Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289–1290 (9th Cir.2001) (citing Judge Donna J. Hitchens & Robert D. Links, *California Civil Procedure: Civil Rights Litigation* § 3:4). From a review of the contemporaneous tape recording of the incident, including the police officers' kicking in the front door, screaming at KC, roughly handling Plaintiff Latoya Norman and using a taser

on Richardson, it is clear that the illegal entry and arrest of KC were made in the context of continuing coercive behavior by the police officers. It is clear from the tape that Plaintiffs were fearful and reasonably perceived a threat of violence. Defendants do not contend otherwise. Accordingly, the Court GRANTS Plaintiffs' motion for summary adjudication as to this count.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for partial summary judgment and GRANTS Plaintiffs' cross-motion for partial summary judgment.

**IT IS SO ORDERED.**